IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLENN D. TAYLOR,                    :
                                    :
        Petitioner,                 :
                                    :        1:11-cv-0462
    v.                              :
                                    :        Hon. John E. Jones
SUPERINTENDENT OF SCI               :
HOUTZDALE, *et al.,*                :
                                    :
        Respondents.                :

## MEMORANDUM

**October 2, 2013**

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Petitioner Glenn D. Taylor ("Petitioner" or "Taylor"), an inmate presently

confined at the State Correctional Institution at Houtzdale, Pennsylvania ("SCI

Houtzdale"), commenced this *pro se* action by filing a Petition for Writ of Habeas

Corpus ("Petition") under the provisions of 28 U.S.C. § 2254. (Doc. 1). Taylor

challenges his 2004 conviction in the Dauphin County Court of Common Pleas for

second degree murder, criminal conspiracy, unlawful restraint, and carrying a

firearm without a license.

By Order dated April 26, 2011, service of the Petition was directed, and

Respondents were directed to answer the Petition within twenty-one (21) days, or

by May 17, 2011. (Doc. 6). Following a request for a thirty (30) day extension of

time to answer the Petition, which was granted, (*see* Doc. 8), on May 31, 2011, the

Dauphin County District Attorney's Office filed a Response to the Petition on

behalf of Respondents.  (Doc. 9).  A supporting brief (Doc. 9-1) and an Appendix

of Exhibits (Doc. 9-3 through 9-6) were also filed.

Taylor filed a Motion to Amend his Petition on June 24, 2011.[1]  (Doc. 13).

On July 5, 2011, the Court issued an Order granting Plaintiff's motion to amend

and directing Respondents to file a supplemental response and memorandum of

law addressing the amended issue.  (Doc. 14).

---

[1]     Taylor explained that, at the time he drafted his Petition, he did not have a copy of the Pennsylvania Superior Court opinion that denied his direct appeal from his judgment of sentence, and that he mistakenly stated in his Petition that he was asserting his two (2) grounds for relief as ineffective assistance of counsel claims.  (*Id.* at ¶¶ 9, 11; *See* Doc. 1, Petition, ¶¶ 7, 8). Specifically, he states his grounds as follows in his Petition:

> 7.      Petitioner believes that two (2) issues can be salvaged from the entire appeals process of this case to date.  One from the direct appeal, and one from the appeal of the PCRA denial.  However, [Petitioner] cannot meet basic pleading requirements with the necessary records.  Petitioner believes that an evidentiary error occurred violative of the principle of law under *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, __, 35 L.Ed. 2d 297 (1973) that was preserved under direct appeal.

> 8.      Petitioner also believes that an *Allen* charge (i.e. *Allen v. United States,* 164 U.S. 492) violation has prejudiced the decision-making process of his jury verdict. This matter was preserved under a timely PCRA appeal.  Both of these matters are brought under ineffective assistance of counsel via on (sic) a constitutional level violative of the 6th and 14th Amendments to the United States Constitution.

(Doc. 1 at ¶¶ 7, 8).
        Taylor requested permission to amend his Petition to reflect that his first issue was not an ineffective assistance of counsel claim, but rather that the trial court erred in failing to permit the use of the full statement of his co-defendant at trial and instead allowing into evidence a redacted statement given by the co-defendant that was addressed in the direct appeal.  (*See* Docs. 13, 14). A review of the record showed that one of the six (6) issues raised by Taylor on direct appeal was in fact this issue.

On July 19, 2011, Respondents filed their supplemental response. (Doc. 15). Petitioner additionally filed a reply to the supplemental response on July 28, 2011. (Doc. 16). Accordingly, the Petition is fully briefed and ripe for review. For the reasons set forth herein, the Petition will be denied.

## I.    Factual Background

Taylor's criminal charges arise out of a shooting death of a woman in the Italian Lake area of Harrisburg, Pennsylvania. (Doc. 1, p. 2). On December 15, 2004, a jury sitting in the Dauphin County Court of Common Pleas found Taylor guilty of second degree murder, two counts of criminal conspiracy, unlawful restraint, and carrying a firearm without a license. (Doc. 9-4, Ex. A, p. 5-6). On the same day, Taylor was sentenced to life plus 75 to 300 months to run consecutive to the life sentence. (Doc. 1, p. 1). Taylor appealed. (*Id.*).

The Superior Court of Pennsylvania affirmed Taylor's judgment of sentence on April 21, 2006. (Doc. 9-1, p. 2). Taylor's appeal to the Pennsylvania Supreme Court was denied on October 5, 2006 and his petition for certiorari was denied by the United States Supreme Court on March 5, 2007. (*Id.*).

Taylor filed a *pro se* petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541 *et seq.,* on August 31, 2007. (*Id.* at 3). Taylor was appointed PCRA counsel to assist with his post-conviction appeal. (*Id.*). On November 7, 2008, however, Taylor's appointed attorney filed a petition to

withdraw because Taylor's allegations were without merit. (*Id.*). Taylor was given notice of the PCRA court's intention to dismiss the PCRA petition on November 10, 2008. (*Id.*). On June 26, 2009, the PCRA court dismissed Taylor's petition. (*Id.*).

The Superior Court of Pennsylvania affirmed the denial of PCRA relief on May 11, 2010. *Commonwealth v. Taylor,* No. 1297 MDA 2009 (Pa. Super. May 11, 2010). The Supreme Court denied Taylor's Petition for Allowance of Appeal on March 1, 2011. (*Id.*).

Petitioner filed his original Petition for Writ of Habeas Corpus on March 11, 2011. (Doc. 1). Respondents filed their initial response on May 31, 2011. (Doc. 9).

On June 9, 2011, Taylor filed a motion for an order requesting Respondent to provide complete court records. (Doc. 10). That motion was granted, in part, and denied, in part.[2] (Doc. 11). In an Order dated June 15, 2011, this Court denied Petitioner's request directing Respondents to produce two (2) copies of the entire trial transcript but granted Petitioner's request directing Respondents to produce copies of the trial court's 1925(a) opinion regarding Petitioner's direct appeal from his judgment of sentence. (*Id.*). The Respondents complied and filed the opinion on June 17, 2011. (Doc. 12).

---

[2] Petitioner's request for a thirty (30) day extension of time to file his reply brief was also granted in this Order. (Doc. 11).

Taylor was allowed to amend his Petition to fix the defect making his first ground for relief not an ineffective assistance of counsel claim, but a claim that the trial court erred in failing to permit use of the full statement of his co-defendant at trial instead allowing into evidence a redacted statement given by the co-defendant. (*See* Docs. 13, 14). Respondents filed a supplement response to the new ground. (Doc. 15). Plaintiff filed a reply on July 28, 2011. (Doc. 16).

## II. Discussion

Taylor files his Petition alleging two (2) grounds for habeas relief, (1) that the trial court erred in failing to permit use of the full statement of his co-defendant at trial instead allowing into evidence a redacted statement given by the co-defendant, and (2) ineffective assistance of trial counsel when counsel failed to object to the *Allen*[3] charge, thereby prejudicing the decision-making process of Taylor's jury verdict. (Docs. 1, 13, 14). We will not grant Petitioner habeas relief on either of these grounds.

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal

---

[3] *Allen v. United States,* 164 U.S. 492 (1896).

habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-8; *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104 (3d Cir. 1997).

If review of the issues presented in a habeas petition on the merits is warranted, as is the case here, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims[4] that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places the burden on a petitioner to make this showing.  *Williams v. Taylor*, 529 U.S. 362 (2000).

## A.    Redacted Statement

On direct appeal, Taylor argued that the trial court erred in only allowing into evidence a *redacted* statement.  (Doc. 9-5, Ex. E, p. 38).  This statement was

---

[4] Habeas corpus petitions cannot be heard unless each claim was presented through "one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *see also Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).  With the first claim being amended, both Petitioner and Respondent agree that Petitioner has met the exhaustion requirement.

given by Taylor's co-defendant to Detective Heffner, the affiant of the criminal

homicide case, while the co-defendant was incarcerated. (*Id.* at 41). During trial,

an objection was made in reference to the statement. An extended dialogue then

occurred between the trial court and counsel wherein the objection and the trial

court's ultimate ruling were discussed. After hearing from all parties, the trial

court reiterated that the statement would be allowed in, noting however, that

Taylor's name would be redacted.[5] (*See* Doc. 9-4, Ex. B, 720:11-732:1).

In his current habeas Petition, Taylor contends that the trial court's decision

to redact the statement, and the Superior Court's affirmance of the ruling, was

---

[5] The statement at issues is as follows – the bracketed names represent the redactions -

… the following exchange between Detective Heffner and Defendant Mitchell occurred:

> QUESTION: Did you tell [Taylor] that Cachi (the victim) ripped you off?
> ANSWER: Yes.
> QUESTION: What did you tell [Taylor] about it?
> ANSWER: I told them that the money was going to be $100 short, because she ran off.
> QUESTION: What did he say about that?
> ANSWER: He said that I was supposed to be watching her and that was supposed to come out of my money.
> QUESTION: Was he mad?
> ANSWER: Not to me.
> QUESTION: Did he ever mention it again?
> ANSWER: No.
> QUESTION: Did he take it out of your money?
> ANSWER: Yes, it is.

(*See* Doc. 9-4, Ex. B, 720:11-732:1).

contrary to or an unreasonable application of clearly established law.[6]  Specifically,

Taylor argues that the ruling violated *Chambers v. Mississippi,* 410 U.S. 284

(1973).  Petitioner has, however, failed to make this showing.

The Superior Court noted that Taylor argued that the co-defendant's

statement was allowable both as a statement against interest[7] and as a statement of

a co-conspirator[8].  *See Commonwealth v. Taylor,* 809 MDA 2005 (Super. Ct. Pa.

April 21, 2006); (Doc. 9-5, Ex. D.).  However, the Court also noted that Taylor

never really asserted an argument for the admissibility of Taylor's own statement

to the co-defendant other than a reference to the "rule of completeness."  (*Id.*).

---

[6] Taylor raised this issue in his direct appeal and the Superior Court ultimately affirmed the judgment of sentence in their opinion.  *See Commonwealth v. Taylor,* 809 MDA 2005 (Super. Ct. Pa. April 21, 2006); (Doc. 9-5, Ex. D.).

[7] Rule 804(b)(3) of the Pennsylvania Rules of Evidence lists the statement against interest as not being excluded by the rule against hearsay if the declarant is unavailable as a witness.  Pa. R. E. 804(b)(3).  A statement against interest is a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

*Id.*  This Pennsylvania rule is identical to Rule 804(b)(3) of the Federal Rules of Evidence.  *See* Fed. R. E. 804(b)(3).

[8] The co-conspirator exception states, "statements of a co-conspirator [may be] admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of a conspiracy."  *Commonwealth v. Stivala,* 645 A. 2d 257, 264 (Pa. Super. 1994) (*quoting Commonwealth v. Moyers,* 570 A.2d 1323, 1326 (Pa. Super. 1990).

Further, the Court noted that the basis for admitting Taylor's hearsay statements relied upon by counsel during discussion of the matter, "effect on listener," was not pursued on appeal and not an exception to the hearsay rule with which the Superior Court was familiar. In the end, the Superior Court found that there was no error because Taylor did not proffer, during the discussion of the statement's admissibility, a proper basis for admitting his hearsay statement. (*Id.*). Consequently, the Court stated that even though it found the decision to redact to cure the hearsay problem "a curious choice," it could not conclude that the court committed an abuse of discretion in the context presented to it. (*Id.*).

The statement in question was undoubtedly hearsay within hearsay. The Pennsylvania courts properly found that it was inadmissible hearsay[9], especially considering trial counsel's creative argument of "effect on listener." Though we agree with the Superior Court that the use of redaction by the trial court to fix the hearsay is odd, we cannot say that the result of the redaction is contrary to or an unreasonable application of clearly established law since ultimately the statement should never have been admitted at all.

---

[9] The crime occurred on November 1, 2000 and the interview, in which the statement is taken from, occurred on April 17, 2003, over two years later. (Doc. 12, p. 17). Clearly, this statement cannot be construed as a statement made during, and in furtherance of, the conspiracy. (*Id.* at 17-18). Further, only some parts of the statement were against the co-defendant's penal interest. (*Id.* at 15). The secondary hearsay issue, that is the statements of what Taylor said to Mitchell, did not fall under a valid hearsay exception argued by trial counsel.

Moreover, despite Taylor's attempts to draw similarities between his case and *Chambers* and its progeny, he fails to see the drastic distinguishing factors between his case and *Chambers.*

In *Chambers,* the defendant was convicted of murdering a police officer. *Chambers,* 410 U.S. 284. During the defendant's trial, the defendant was not allowed to cross-examine a key witness and certain evidence was excluded by application of the state's hearsay rule. *Id.* The United States Supreme Court held that the exclusion, under the state hearsay rules, of critical exculpatory testimony that another party committed the crime, which under the circumstances was likely to be trustworthy and within the rationale of the exception for declarations against penal interests, coupled with the State's refusal to permit the defendant's cross-examination of a key witness because of a common law rule, denied the defendant a trial in accord with traditional and fundamental standards of due process. (*Id.*).

The state court in *Chambers* only allowed a hearsay exception for statements against pecuniary interests, not penal interests of the declarant. (*Id.* at 299). The Supreme Court found that the exclusion of the statements in the case resulted in a violation of due process because, despite the hearsay rule, the "hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Id.* at 300. The statements, which were confessions that another party committed the crime,

were spontaneously made to a close acquaintance shortly after the murder occurred, were corroborated by some other evidence in the case, were self-incriminatory and unquestionably against interests, and were numerous. *Id.* at 300-301. Further, the declarant of the statements was present in the courtroom and under oath, and could have been cross-examined. *Id.*

As summarized by the trial court, Taylor supplied his co-defendant with drugs, which his co-defendant would then sell. The co-defendant "had given the victim drugs to sell for him [co-defendant] on a consignment basis, sometimes referred to as 'fronting' drugs. However, rather than selling the drugs and returning the proceeds to [the co-defendant], [the victim] absconded with the drugs[10] and refused to pay [the co-defendant] for them." (Doc. 12, p. 2-3). The evidence Taylor wanted to admit, unredacted, concerned a conversation that took place between his co-defendant and a detective. Taylor argues that the conversation can be used to show a lack of motive because Taylor was going to get the money out of his co-defendant's share and thus, he had no debt with the victim.

The conversation that occurred between the co-defendant and the detective does not outright contain any statements saying Taylor did not commit the murder or that his co-defendant committed the murder, it indicates only that Taylor was taking his money out of the co-defendant's share. Further, the trial court points

---

[10] The trial court notes that the drugs really belonged to Taylor. (Doc. 12, p. 3).

out, in its opinion addressing Taylor's appeal to the Superior Court, that during the conversation, when asked if Taylor was mad, the co-defendant replied, "not to me." (*Id.* at 14). "This strongly implies that [Taylor] was indeed upset, but his anger was directed towards someone other than [the co-defendant] (presumably the Victim.)." (*Id.*). Additionally, the statement was made to a detective years later, not spontaneously made to a close acquaintance shortly after the murder occurred as in *Chambers*. (*Id.*). There was also only one statement, not numerous statements, and though the co-defendant was present in the courtroom, he did not take the stand and could not be compelled to do so because of his status as a co-defendant. Finally and to reiterate, this was not simply hearsay, but *hearsay within hearsay*.

Taylor has failed to show how the hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. True, the statement had colorable value to Taylor, although its efficacy is debatable. But whatever its probative value, the circumstances do not mimic *Chambers* at all, and thus the constructive exclusion of the statement via redaction was hardly contrary to or an unreasonable application of clearly established law. Simply put, the statement likely should never have been admitted *at all,* even in its redacted form.

## B.    *Allen* **Charge**

Taylor's final argument is that trial counsel was ineffective in failing to object to the trial court's *Allen* charge to the jury and that he should be awarded a new trial on the basis of the *Allen* charge given by the trial judge.  (Doc. 16, 5-8). In his filings, Taylor seems to simultaneously argue ineffective assistance of counsel and that the *Allen* charge was improper.[11]  (*Id.*).

Taylor first alleged that trial counsel was ineffective for failing to object to the *Allen* charge given to the jury during the filing of his PCRA Petition.  The trial court found the ineffective assistance of counsel claim meritless.  (Doc. 9-6, Ex. K, p.3).  During the PCRA appeal process, Taylor's PCRA counsel filed a Petition to Withdraw wherein counsel explained that he reviewed the Trial Transcript with regard to the instructions and found no grounds for objections.[12]  (*Id.* at p. 10). When the Superior Court of Pennsylvania considered this issue, it found that, though some of the language in the jury charge approximated an *Allen* charge, the jury charge was appropriate and counsel was not ineffective in failing to object to

_____

[11] We note that the claim originally brought by Taylor, and exhausted by him through state processes, is the ineffective assistance of counsel argument.

[12] Counsel noted that the *Allen* charge was given on the second day of deliberations, after already deliberating a full day and that the instruction follows the standard guidelines established for Pennsylvania courts.  (Doc. 9-6, Ex. K, p. 10).  Counsel also noted that the *Allen* charge met the requirements of the Pennsylvania Supreme Court case of *Commonwealth v. Spencer,* 275 A.2d 299 (Pa. 1971), and that Taylor was unable to establish that the charge given had any negative effect on the outcome of the trial.  (*Id.* at 11).  Counsel ultimately noted that the claim was nothing more than a bald assertion of ineffectiveness and was not sufficient to warrant relief, thus the issue was without merit.  (*Id.*).

it. (Doc. 9-6, Ex. M, p. 9). Ultimately, we find that Taylor has not shown that the Pennsylvania court's decision regarding trial counsel's failure to object to the *Allen* charge was contrary to, or involved an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The U.S. Supreme Court law governing a claim of ineffective assistance of counsel was established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), where the Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel. The individual making this claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." *Id*. at 687–90.

The Pennsylvania standard for ineffective assistance, i.e., that to show ineffective assistance a petitioner must show that the underlying claim has merit, that counsel had no reasonable basis for his conduct, and resulting prejudice (meaning that the outcome of the proceeding would have been different) *see Commonwealth v. Todaro,* 701 A.2d 1343, 1346 (Pa.1997), is materially identical to the test enunciated in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Therefore, "the appropriate inquiry is whether the Pennsylvania courts'

application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i .e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland."

*Werts*, 228 F.3d at 204.

During trial, when informed by the jury that it was deadlocked, the trial court gave the following instruction:

> I'm going to, ladies and gentlemen, give you a few more comments that may hopefully assist you. So I would like to convey the following to you.
>
> This is, obviously, an important case. The trial has been expensive in terms of time, effort, money and emotional strain to both the Defense and the prosecution.
>
> If you should fail to agree upon a verdict, the case will be left open and may have to be tried again. Obviously, another trial would only serve to increase the cost to both sides and there is no reason to believe this case can be tried again by either side any better or more exhaustively that it has been tried before you.
>
> Any future jury must be selected in the same manner and from the same source as you were chosen. And there is no reason to believe that this case could ever be submitted to 12 men and women who are more conscientious, more impartial, or more competent to decide it or that more or clearer evidence could be produced.
>
> If a majority or even a lesser number of you are in favor of an acquittal, the rest of you should ask yourselves again, and most thoughtfully, whether you should accept the weight and sufficiency of evidence which fails to convince your fellow juror beyond a reasonable doubt.
>
> On the other hand, if a substantial majority of your number are in favor of conviction, those of you who disagree should reconsider whether your doubt is a reasonable one since it appears to make no effective impression upon the minds of the others.
>
> Not only should jurors in the minority reexamine their position, but jurors in the majority should do so also. This is to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the persons in disagreement with them.

Remember at all times that no juror is expected to give up an honest belief he or she may have as to the weight or effect of the evidence, but after full deliberation and considering of the evidence in this case, it is your duty to agree upon a verdict, if you can do so.

You must remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, your verdict with regard to that matter for that Defendant must be not guilty.

On the other hand, if, indeed, the evidence does establish guilt beyond a reasonable doubt on that matter for a particular Defendant, then your verdict should be guilty.

You may be as leisurely in your deliberations as the occasion may require and you should take all the time which you feel is necessary.

I will now ask you to retire once again and to continue your deliberations with these additional comments in mind to be applied, of court, in conjunctions with all the other instructions I have previously given to you.

(Doc. 9-4, Ex. B. 888:14-890:23).

In *Allen,* the Supreme Court upheld a charge in which "the court direct[s] the minority jurors to reconsider their views in light of their disagreement with the majority." *United States v. Eastern Med. Billing, Inc.,* 230 F.3d 600, fn. 1 (3d Cir. 2000). In *United States v. Fioravanti*, 412 F.2d 407, 420 (3d Cir. 1969), however, the Third Circuit Court of Appeals, exercising its supervisory power over the district courts, held that the use of an *Allen* charge in this Circuit would, from that point on, constitute reversible error except in "very extraordinary circumstances." *See also Eastern Med. Billing*, 230 F.3d at 607-08. In *Eastern Medical Billing*, the Third Circuit held that the trial court had given an impermissible Allen charge where it instructed, in part, as follows:

If the greater number of you are for one side, each dissenting juror ought to consider whether his or her view is a reasonable one since it makes no

effective impression on the minds of so intelligent fellow jurors who bear the same responsibility . . . Also, the jurors who constitute the greater number should consider the reasons of those who take a different position to see whether there may be persuasive merit in that position.

*Eastern Med. Billing,* 230 F.3d at 605, 613.

The trial court's instruction in this case is clearly distinguishable from those previously found impermissible in the Third Circuit. The trial court, in its instruction, encourages both the minority and majority to reexamine their positions. Further, it reiterated to the jurors to not give up an honest belief he or she may have as to the weight or effect of evidence. As explained by the Third Circuit in *United States v. Brennan,* 326 F.3d 176, 192-93 (3d Cir. 2003), "a charge would not be coercive if it contained language urging the jurors to re-examine their own view but not to 'surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of [their] fellow jurors, or for the mere purpose of returning a verdict.'" *Id.* at 192-93 *citing Fioravanti,* 412 F.2d at 420 n.32; *see also United States v. Alper*, 449 F.2d 1223, 1234 (3d Cir. 1971) (holding that a supplemental jury charge was not unduly coercive because although it suggested jurors re-examine their views, it told them not to surrender their honest convictions); *cf. also Gov't of the Virgin Islands v. Gereau*, 502 F.2d 914, 935-36 (3d Cir. 1974) (holding that a statement that the jurors were not required to reach a verdict but should try to do so was not coercive).

When Petitioner brought this issue in front of the PCRA Court, he only broadly alleged that the counsel was ineffective for failing to object to the *Allen* charge. Traditionally, the problem with an *Allen* charge focuses on references to the majority and minority, which the PCRA Court considered. Now Petitioner, for the first time, argues that counsel was also ineffective for failing to object to other parts of the charge, beyond the *Allen* charge, including references to the cost and expense of another trial.[13] (Doc. 16, p. 7). He argues that these instructions intimidated the jury and his counsel should have objected to their use.

As an initial matter, this Court notes that there is uncertainty as to whether Petitioner truly exhausted this claim.[14] At the very least, Petitioner did not properly present his argument to the Pennsylvania courts. Considering Petitioner's

---

[13] We note Petitioner also takes issue with the following part of the charge (*see* Doc. 16),

> On the other hand, if, indeed, the evidence does establish guilt beyond a reasonable doubt on that matter for a particular Defendant, then your verdict should be guilty.

(Doc. 9-4, Ex. B. 888:14-890:23). However, that aspect of the charge reads as a whole,

> You must remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, your verdict with regard to that matter for that Defendant must be not guilty.
> On the other hand, if, indeed, the evidence does establish guilt beyond a reasonable doubt on that matter for a particular Defendant, then your verdict should be guilty.

(*Id.*). We see no problem with this aspect of the charge and find no case law in support of Petitioner's opinion that it is somehow coercive. As such, Petitioner's counsel was not ineffective for failing to object to its inclusion in the judge's charge.

[14] Habeas corpus petitions cannot be heard unless each claim was present through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *see also Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

bald assertion to the Pennsylvania courts that he received ineffective assistance of counsel when counsel failed to object to the *Allen* charge, we do not find that the Pennsylvania courts' decisions were contrary to, or involved an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, *see* 28 U.S.C. § 2254(d)(2), when the courts only addressed the part of the jury charge that referenced the majority and minority.

Even if the Pennsylvania courts were incorrect in failing to address this additional part of the jury charge, we find that counsel was not ineffective for failing to object to these parts of the jury charge so that the Pennsylvania courts' ultimate denial of Petitioner's claims was also not contrary to, or involved an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As noted by Taylor, the supplemental charge to which Petitioner now objects does contain references to costs and expenses[15] of another trial. However, we find that trial counsel did not act unreasonably in failing to object to the charge.

---

[15] The Court notes that in *United States v. Burley,* 460 F.2d 998 (3d Cir. 1972), the Third Circuit found that the possibility of a hung jury and a retrial is not relevant to the Jury's determination in

First, we note that, unlike the charge in *United States v. Burley,* 460 F.2d 998 (3d Cir. 1972)*,* this charge contained curative language, including language that no juror should give up an honest belief and further encourage the jurors to agree upon a verdict *if they could do so.*  To be sure, the reference to costs was inadvisable, but we do not judge it in a vacuum, but rather in the context of the entire instruction.  Indeed, the judge also noted that jury could be as leisurely in their deliberations as the occasion required and that they should take all the time they felt necessary.  Thus, a lawyer could reasonably decide not to object to the coercive charge in light of the curative language.  Further, reading the charge as a whole, a reasonable lawyer could view the charge as merely a forceful effort to encourage further deliberation rather than a coercive charge.

The language that Petitioner takes issue with is also very similar to other charges found in other cases and in treatises.  For example, in *United States v. Breuer,* 1997 U.S. Dist. LEXIS 14157 (E.D. Pa. 1997), the defendant argued that the Court's use of supplemental charge to the jury was an inappropriate *Allen* charge.  The charge in that case reads,

> Ladies and gentlemen of the jury, I'm advised that you have reached an impasse and I'm going to ask you to continue your deliberations in an effort to reach an agreement, and I want to make a few comments about that.
> This is an important case. The trial has been expensive in time, it's been expensive in effort. It's an emotional strain, it's costly for both the

---

a case, and as such, references to costs and expense can subject jurors to judicial pressure to vote contrary to their honest best judgment.

defense and the prosecution. If you should fail to agree upon a verdict, the case will be left open and may have to be tried again. Obviously, another trial would only serve to increase the costs of both sides, and there's no reason to believe that the case can be tried again by either side any better or more exhaustively than it has been tried to you

Any future jury must be selected in the same way that you were selected, from the same sources. And there's no reason to believe that the case could ever be submitted to 12 people who are more conscientious than you are, who are more impartial than you are and who are more competent than you are to decide it. And I doubt very seriously whether the evidence will be more abundant or clear than has been produced this week.

If a majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression on the minds of others. On the other hand, those of you who are in favor of acquittal, the rest of you should ask yourselves again and more thoughtfully whether you should accept the weight and sufficiency of the evidence which obviously fails to convince your fellow jurors beyond a reasonable doubt.

Remember, however, that at no time is a juror expected to give up his or her honest belief as to the weight affecting the evidence, but after full deliberation and consideration of the evidence, it is your duty to agree upon the verdict if you can do so.

You must remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the defendant should have a unanimous verdict of not guilty.

I'll ask you to retire once again with these thoughts in mind and continue your deliberations in conjunction with the other instructions that I previously gave to you.

*Id.* at *30-*32. The above charge substantially tracks the charge in the case at bar.

In *Breuer,* the Court in the Eastern District of Pennsylvania rejected the

characterization of the instruction as an *Allen* charge and found that the defendant

failed to cite authority that established that it was improper.  Further, similar

charges can be found in Federal Jury Practice and Instruction[16] and other such treatises.

As such, we do not find counsel's failure to object to the specific language Petitioner complains of as unreasonable, especially when reading the charge as a whole and considering the curative language contained therein. Taylor has not shown that the Pennsylvania court's decision regarding trial counsel's failure to object ot the *Allen* charge was contrary to, or involved an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## III.    Conclusion

Accordingly, for the reasons discussed above, we will deny Taylor's habeas petition. A certificate of appealability will not issue. An appropriate Order will follow.

---

[16] *See* 1A Fed. Jury Prac. & Instr. § 20:08.